# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Brian Waldner, individually and as the representative of a class of similarly situated persons, and on behalf of The 401(k) Savings and Retirement Plan, Sponsored by Natixis Investment Managers, L.P.,<br><br>                  Plaintiff,<br>v.<br><br>Natixis Investment Managers, L.P., Natixis Investment Managers, L.P. Retirement Committee, and John and Jane Does 1-20,<br><br>                  Defendants. | Case No. 1:21-cv-10273-LTS-PGL<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

## INTRODUCTION

The release of claims that Defendants purports to enforce against Plaintiff Brian Waldner does not apply to the types of claims or to the duration of the statutory period at issue in this case. To the extent that Plaintiff agreed to a separate "covenant not to sue," an analysis of that agreement leads to the same result. Thus, Defendants' release-related affirmative defenses are destined to fail. For this reason and the reasons that follow, issues related to Plaintiff's release will not become a "major focus" of the litigation, and are insufficient to "tip the decisional scales in a class certification ruling." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000). Defendants' objections should be denied.

Defendants do not argue that certification is improper because absent class members have signed similar releases, or argue that the class definition is overbroad because it would include any such individual. *See* Doc. No. 60 at 21–24. In addition, they have failed to produce any evidence that other members of the proposed class are subject to an affirmative defense that would frustrate classwide adjudication. Accordingly, Defendants have not carried their burden of producing sufficient evidence to rebut the Plaintiff's initial showing that the elements of Rules 23(a) and (b)(1) are satisfied. Plaintiff respectfully requests that the Court certify the proposed class.

## BACKGROUND

### I. THE COURT'S REQUEST FOR ADDITIONAL INFORMATION

In conjunction with Plaintiff's pending motion for class certification, Doc. No. 50, the Court has asked the parties to provide "additional information … to address the significance of the releases and covenant not to sue in Plaintiff's termination agreement with Natixis, as they relate to Plaintiff's typicality for purposes of class certification." Doc. No. 89. The Court specifically directed the parties' attention to the Third Circuit's decision in *In re Schering Plough Corp. ERISA*

*Litig.*, 589 F.3d 585, 600 (3d Cir. 2009), and also invited the parties to address "the legal significance of Plaintiff's covenant not to sue," separate from the enforceability of a release. *Id.*

## II.  PLAINTIFF'S RELEASE AND THE PROPOSED CLASS

### A.  Plaintiff Did Not Release Claims Arising After May 1, 2018

During his employment with an affiliate of Defendant Natixis Investment Managers, L.P. ("Natixis"), Plaintiff Brian Waldner participated in the 401(k) Savings and Retirement Plan, Sponsored by Natixis Investment Managers, LLC ("the Plan"). Doc. No. 52 at 1 (*Declaration of Brian Waldner in Support of Plaintiff's Motion for Class Certification ("Waldner Declaration"), at ¶ 2*). When Mr. Waldner's employment ended, he signed a Termination Agreement that includes a lengthy release of claims that applies "from the beginning of time *through the date you execute this agreement*." Doc. No. 61-3 (provisionally filed under seal) at WALD0001483–84 (¶ 9) (emphasis added). While the release is written in technical legalese, the sentence immediately following the release helpfully explains in plain English: "This means that you may not sue Natixis Advisors, L.P. for any *current or prior* claims." *Id.* (emphasis added). Mr. Waldner executed the agreement on May 1, 2018. *Id.* However, Mr. Waldner continued to be an active Plan participant for nearly three more years, up until the filing of this lawsuit on February 18, 2021. Doc. No. 1 at ¶ 18; Doc. No. 52 at 1.

### B.  Other Class Members May Have Signed Similar Agreements, but the Precise Number is Unknown

On September 26, 2022, Plaintiff filed a motion to certify the following class:

> All participants and beneficiaries of the 401(k) Savings and Retirement Plan, Sponsored by Natixis Investment Managers, LLC (f/k/a The 401(k) Savings and Retirement Plan, Sponsored by Natixis Investment Managers, L.P., and The 401(k) Savings and Retirement Plan, Sponsored by Natixis Global Asset Management) ("the Plan") on or after February 18, 2015 who were invested in funds that were affiliated at any time with Natixis, excluding any persons with responsibility for the Plan's investment or administrative functions.

Doc. No. 50.

For purposes of establishing the numerosity of this proposed class, Plaintiff previously submitted summary data of the number of individuals with an account balance on January 1, 2017, establishing that there are *at least* 1,200 putative class members based on the number of active accounts as of that date. Doc. No. 69 at 2 (Declaration of Brock J. Specht in Support of Plaintiff's Motion for Class Certification ("Specht Decl."), Ex. 19); *see also* Doc. No. 53 at 6–7 (Specht Decl. ¶ 16). In response to the Court's request for additional information, Plaintiff's counsel has expanded this analysis to include year-end account balance information from 2015 to 2021, which yields an estimate of approximately 1,692 individuals in the proposed class. Supplemental Declaration of Brock J. Specht in Support of Plaintiff's Motion for Class Certification ("Supp. Specht Decl.") ¶ 5.

To date, Defendants' counsel has asserted that other putative class members have executed similar termination agreements containing releases of claims, but Defendants have declined to produce any evidence identifying the number of putative class members subject to such releases.[1] This information is exclusively within Defendants' possession.

## ARGUMENT

**I.     PLAINTIFF'S RELEASE DOES NOT DEFEAT TYPICALITY**

"Plaintiffs bear the burden of making an initial showing that a proposed class satisfies the Rule 23 requirements." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) (citing *Smilow*, 323 F.3d at 38). The typicality requirement, "is 'not highly demanding because the claims only

---

[1] Defendants have produced a total of 19 redacted or unexecuted templates of termination agreements, and represented that it would be "unduly burdensome and oppressive . . . to require Defendants to identify each separate agreement, and identify the putative class member who signed each such agreement, relating to the Thirteenth Affirmative Defense, which among other things would appear to require the manual review of the personnel file of every putative class member who no longer is employed by Natixis or an affiliated entity." *See* Doc. No. 53-3 at 6. Thus, the raw number and proportion of potentially affected absent class members is unknown to Plaintiff.

need to share the same essential characteristics, and need not be identical.'" *Gonzalez v. XPO Last Mile, Inc.*, 579 F. Supp. 3d 252, 262 (D. Mass. 2022) (quoting *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 24–25 (D. Mass. 2003)); *see also García-Rubiera*, 570 F.3d at 460. At this stage, "[plaintiffs] need not make that showing to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *In re Nexium Antitrust Litig.*, 777 F.3d at 27 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)).

"Once plaintiffs have made their initial showing, *defendants* have the burden of producing sufficient evidence to rebut the [plaintiffs'] showing." *Id.* (emphasis added). Speculation regarding an affirmative defense does not suffice. *Id.* at 31; *Waste Mgmt. Holdings, Inc.*, 208 F.3d at 298 ("[A]rguments woven entirely out of gossamer strands of speculation and surmise" do not "tip the decisional scales in a class certification ruling."); *accord In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 122 (2d Cir. 2013) ("[I]f bald speculation that some class members might [be subject to an affirmative defense] were enough to forestall certification, then no... allegations of this sort (no matter how uniform...) could proceed on a class basis[.]"). Thus, to rebut the plaintiff's showing, a defendant must establish that the purported barrier to certification is *likely* to become a "major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). Because the Court remains free to modify the class if necessary based on later developments, "[d]oubts should be resolved in favor of certification[.]" *Payne*, 216 F.R.D. at 25; *see* Fed. R. Civ. P. 23(c)(1); *Donovan v. Philip Morris USA, Inc.*, 2012 WL 957633, at *4 (D. Mass. Mar. 21, 2012).

For the reasons that follow, the existence of Mr. Waldner's release does not render his claims—or the defenses to those claims—atypical of the proposed class under Rule 23, and the proposed class should be certified.

### A. Plaintiff's Release Does Not Affect Typicality Because Plaintiff's Claims Are Brought on Behalf of the Plan and Are Not Subject to the Release

"[A]mple case law holds that the signing of releases does not affect typicality where ERISA claims allege damage to the Plan as a whole rather than to individuals." *Taylor v. United Techs. Corp.*, 2008 WL 2333120, at *4 (D. Conn. June 3, 2008); *see, e.g.*, *Loomis v. Exelon Corp.*, 2007 WL 2060799, at *6 (N.D. Ill. June 26, 2007) (same). That is precisely the case presented here.

Plaintiff brings his claims on behalf of the Plan. The vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2). *See, e.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594–95 (3d Cir. 2009) (collecting cases). Thus, the claims in this case fall outside the scope of Plaintiff's release.

As a result, Plaintiff's release has no bearing on disposition of this case: neither the fact of Defendants' liability nor the amount of any damages will be affected by Plaintiff's release.[2] Accordingly, "there is no reason to think that the release issue will be relevant to this litigation," and typicality remains satisfied. *Nistra v. Reliance Tr. Co.*, 2018 WL 835341, at *4 (N.D. Ill. Feb.

---

[2] For this reason also, neither Plaintiff's release nor any speculation that Natixis employees "routinely" signed similar releases stand in the way of certification. *See, e.g.*, *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 161 (S.D.N.Y. 2017) ("[T]he fact that Citigroup employees "routinely" sign releases waiving all claims against Citigroup, including claims brought under the ERISA statute does not preclude certification.") (citation omitted); *Woznicki v. Raydon Corp.*, 2020 WL 857050, at *9 (M.D. Fla. Feb. 20, 2020) ("[W]hether... putative class members signed releases possibly preventing them from participating in this action or any recovery are side issues that do not defeat typicality."), *report and recommendation adopted*, 2020 WL 1270223 (M.D. Fla. Mar. 16, 2020); *Chesemore v. All. Holdings, Inc.*, 276 F.R.D. 506, 513 (W.D. Wis. 2011) (fact that 29 of 288 class members signed releases did not defeat typicality where release would be minor issue that would not require individualized attention as there was no contention that the releases had substantially different language); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 354–55 (N.D. Ill. 2007) ("[T]here is no comparable risk that litigation involving a certified class will 'devolve into a lengthy series of individual trials,' again because the claims here are brought under ERISA sections 409 and 502(a)(2) on behalf of the Plan.").

13, 2018); *accord Beck,* 457 F.3d at 300 ("To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial. If a court determines an asserted unique defense has no merit, the defense will not preclude class certification.").

### B. Plaintiff's Release Does Not Affect Typicality Because it Does Not Preclude the Litigation of Future Claims

While the precise "composition of the class" is presently unknown, Defendants have suggested that "other members of the class have signed releases" similar to the one signed by Mr. Waldner. *Schering Plough*, 589 F.3d at 600; *supra* n. 2. Because Mr. Waldner's release applies to only a portion of the proposed class period, he has both released claims and unreleased claims, and is therefore a typical representative of this "mixed" class.

First, for purposes of this action, Mr. Waldner's release is, at most, only partial. Mr. Waldner's release applies only to claims existing "through the date you execute this agreement" (*i.e.* May 1, 2018) and covers only "current or prior claims." Doc. No. 61-3 (provisionally filed under seal) at WALD0001483–84 (¶ 9). But the claims in this case are not limited to conduct occurring on or before May 1, 2018. The gravamen of the Complaint here is an ongoing pattern of favoritism for Natixis's proprietary funds that extends to the present. *See, e.g.,* Doc. No. 19 at ¶¶ 8-13;  Doc. No. 51 at pp. 8-12. As the Supreme Court has repeatedly stated, a plan fiduciary has an ongoing "duty to monitor all plan investments and remove any imprudent ones," *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740 (2022) (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015)), in addition to "the duty to exercise prudence in selecting investments at the outset," *Tibble*, 575 U.S. at 529. Accordingly, Defendants' ongoing imprudent and disloyal preference for proprietary funds "represent new, prospective claims not in existence when the release was executed." *Boeckman v. A.G. Edwards, Inc.*, 461 F.Supp.2d 801, 814–15 (S.D. Ill. 2006); *see also Wildman v. Am. Century Servs, LLC,* 237 F. Supp. 3d 918, 924 (W.D. Mo. 2017)

6

(noting that claims for the failure to monitor plan investments "arose after executing their Agreements and, therefore, are not within the scope of the release."); *Buccino v. Cont'l Assur. Co.*, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983) ("[Defendants] were under a continuing obligation to advise the Fund to divest itself of unlawful or imprudent investments. Their failure to do so gave rise to a new cause of action each time the Fund was injured….").

Under similar circumstances, courts have rejected the notion that typicality is not satisfied. The decision in *Moore v. Comcast Corporation*, which applies the Third Circuit's decision in *Schering Plough*, is particularly apt. 268 F.R.D. 530, 534–38 (E.D. Pa. 2010). In *Moore* the defendants argued that the sole named plaintiff had released her claims because she signed a severance agreement that included a release of claims on May 5, 2007—a date that landed in the middle of the proposed class period. *Id.* at 532, 534. The court rejected this argument, noting that the release "does not bar [plaintiff] from proceeding with the claim to the extent it occurs after … the date on which she signed the release." *Id.* at 537. With respect to typicality, although only a small number of class members, approximately 1.5%, had signed similar releases, *id.* at 536, the court rejected the notion that this prevented certification because "all class members have a shared interest in establishing defendants' liability that vastly outweighs" any individualized concerns, *id.* at 538, and "the issue of the release is not likely to present a major focus of the litigation," *id.* at 537. Other courts confronted with similar issues have reached the same conclusion,[3] and the

---

[3] *See, e.g.*, *Taylor*, 2008 WL 2333120, at *4; *Ramos v. Banner Health*, 325 F.R.D. 382, 391 (D. Colo. 2018) ("Plaintiff Goodale's release at most presents a disputed defense as to claims she had before signing the release on August 11, 2014, but appears to have no effect on any claims arising after that date, nor on any named Plaintiffs other than Ms. Goodale. This does not make Plaintiff Goodale's claims a 'clear loser,' and does not defeat class certification."); *Tigges v. AM Pizza, Inc.*, 2016 WL 4076829, at *9 (D. Mass. July 29, 2016) (explaining in the context of a 23(b)(3) class that "Tigges [is not] required to have been employed for all or most of the time relevant to the class claims in order to support typicality. In essence, the Tigges Defendants cannot articulate why Tigges's being employed by them for a slightly different time period than other

7

same reasoning applies here. *See also* 1 Newberg and Rubenstein on Class Actions § 3:39 (6th ed.) (noting that in ERISA actions such as this, "the proposed class representative's claims are generally held to be typical of the class members' claims even if the proposed representatives' particular benefit plan is distinct from that of the class, they have not suffered equally as a result of alleged fiduciary breaches, or they have a derivative claim.") (collecting cases).

**II.    THE TERMINATION AGREEMENT DOES NOT INCLUDE A SEPARATE COVENANT NOT TO SUE THAT WOULD AFFECT PLAINTIFF'S ABILITY TO PROSECUTE THIS ACTION**

The Court's request for additional information suggests that Mr. Waldner's termination agreement contains a "covenant not to sue" similar to the covenant present in *Schering Plough*. Doc. No. 89. Respectfully, the Court is mistaken on this point, as no such covenant appears in Mr. Waldner's agreement. But even if the agreement is read to contain such a covenant, it would not prevent Mr. Waldner from bringing this action because it would apply only to claims that existed on the date of the agreement, but not future claims arising after that date.

On this point, Mr. Waldner's agreement is fundamentally different from the one at issue in *Schering Plough*. The agreement in *Schering Plough* included both a "release … from all claims" as well as a separate, additional "promise … not [to] file a lawsuit." 589 F.3d at 592 n.4.[4] No such

---

class members, without more, would create a conflict of interests or skew Tigges's incentives away from those whom he represents."); *see also Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 573 (D. Minn. 2014) ("[T]he fact that Plaintiffs have not invested in all of the challenged investment options is not a bar to class certification. Nor is the fact that the putative class members invested in different options at different times. Rather, as Plan participants alleging breaches of the fiduciary duties Defendants owed to the Plan, the class members are seeking redress of similar grievances under the same legal and remedial theories.").

[4] A release and a covenant not to sue are not the same thing. A "covenant not to sue" is a "covenant in which a party having a right of action agrees not to assert that right in litigation." *Covenant*, Black's Law Dictionary (11th ed. 2019). In contrast a "release" is "the act of giving up a right or claim to the person against whom it could have been enforced." *Release*, Black's Law Dictionary (11th ed. 2019). Thus, although similar, "a release and a covenant not to sue have distinct legal effects and purposes." *Schuman v. Microchip Tech. Inc.*, 372 F. Supp. 3d 1054, 1060 (N.D. Cal. 2019).

promise appears in Mr. Waldner's agreement. Rather, as described above, in Mr. Waldner's agreement the technical language of the release is followed by an explanatory phrase stating: "This means that you may not sue Natixis Advisors, L.P. for any current or prior claims…." Doc. No. 61-3 (provisionally filed under seal) at WALD0001484. When a covenant not to sue has interfered with or delayed class certification in ERISA cases, courts have been careful to identify clear language beyond a general release of claims that memorializes the covenant. *See, e.g., In re Suntrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131, at *2 (N.D. Ga. Aug. 17, 2016) (reasoning that based on the broad and unequivocal language stating "I covenant not to ... become a member of any class suing SunTrust asserting any claim released herein," the proposed named plaintiffs could not participate in the action, regardless of whether other claims fell outside of the periods covered by the release); *Myers v. Admin. Comm., Seventy Seven Energy, Inc. Ret. & Sav. Plan*, 2021 WL 4471613, at *4 (W.D. Okla. Sept. 29, 2021) ("Plaintiff expressly agreed that she would 'have no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or in a representative ... capacity on behalf of a class of persons.'"). Such language is absent here.

Further, even if Mr. Waldner's agreement were read to contain a separate covenant not to sue in addition to a release, by its plain terms that covenant would apply only to "current or prior claims." Doc. No. 61-3 (provisionally filed under seal) at WALD0001484. Nothing in the agreement memorializes a promise to refrain from serving as a class representative or from litigating "future" claims (*i.e.*, claims arising after May 1, 2018). And as long as Mr. Waldner has standing to assert claims over some portion of the class period, he may seek plan-wide relief that "sweeps beyond his own injury" and "is not necessarily limited to the period in which he personally suffered injury." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009). Moreover,

9

the Third Circuit has made it clear that typicality is not lacking under *Schering Plough* just because the injuries to the plan and absent class members are broader than those of the class representative. *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 135 (3d Cir. 2022) ("The obvious difference between this case and *Schering Plough* is that the Named Plaintiffs here have a monetary stake in the outcome of the case."). Accordingly, for the same reason that the release does not apply to the claims in this case arising after May 1, 2018, *supra* pp.6-7, any covenant not to sue is similarly limited and does not prevent Mr. Waldner from maintaining this action or representing the interests of the proposed class.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Class Certification.

Dated: January 20, 2023                                Respectfully Submitted,

**NICHOLS KASTER, PLLP**

*s/ Brock J. Specht*
Paul J. Lukas (admitted *pro hac vice)*
Brock J. Specht (admitted *pro hac vice*)
Caroline E. Bressman (admitted *pro hac vice*)
Patricia C. Dana (admitted *pro hac vice*)
NICHOLS KASTER, PLLP
4700 IDS Center, 80 S. 8th Street
Minneapolis, Minnesota 55402
lukas@nka.com
bspecht@nka.com
cbressman@nka.com
pdana@nka.com

Jason M. Leviton (BBO #678331)
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600
jason@blockesq.com

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2023, a true and correct copy of the foregoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: January 20, 2023                    *s/ Brock J. Specht*
                                           Brock J. Specht